## ROBERTS *v.* GROOVER *et al.*

1. An obligation to sell to a named vendee "454.25 acres of lot No. 436 and 75.25 acres of lot 435, all in the 12th land district of Brooks County, Georgia," is a sale of land by the acre, which embraces a covenant of warranty to convey the exact number of acres and frac-

tions of acres specified in the bond for title, or else make good the deficiency in acreage by an abatement of such a proportionate part of the purchase-price as the value of the shortage in acres bears to the value of the total number of acres which ·the vendors agreed and undertook to convey, or to a rescission at the option of the holder of the bond.

2. The ruling in this case is controlled by the decision in *Strickland* v. *Hutchinson*, 123 *Ga.* 396 (51 S. E. 348). The proper solution of the question whether a sale of land is by the tract or by the acre depends upon whether the quantity of land is of the essence of the contract. If, after a description of a tract of land which otherwise identifies the premises either by metes and bounds or by monuments, there appears a statement of the quantity of the land as so many acres more or less, such a sale would be a sale by the tract; but where in a conveyance the usual reference to the land as " all that tract or parcel of land," etc., or " a tract of land," is omitted and the first statement as to the land is a covenant to sell a definite and exact number of acres of land, neither more nor less, the description thereafter following not stating any metes or bounds, it must be adjudged that the quantity of land being first mentioned in the bond for title is of the essence of the contract.

3. Such a sale of land as above stated is a sale by the acre; and the fact that (for the purpose of identification and admeasurement of the exact number of acres so definitely fixed and specified) it is necessary to give further description such as the names of adjacent landowners and the name of a former owner will not transform the contract into a sale of land by the tract, where the exact number of acres of land has previously been fixed in the outset of the contract of sale. A description of the land which merely enables one to find and measure ·the number of acres precisely defined and fixed by the contract cannot defeat the covenant to sell an exact number of acres.

No. 3509. SEPTEMBER 11, 1923.

Equitable petition. Before Judge W. E. Thomas. Brooks superior court. November 8, 1922.

The plaintiff brought a petition seeking to have rescinded and declared void certain notes that he had given to the defendants, and to enjoin the prosecution of a suit previously filed by the defendants in the city court of Quitman, and to have canceled a bond for title given to the plaintiff by the defendants in pursuance of an attempted sale between the parties. The exact wording of the bond for title, as relates to the description of the property, was " to all the·following described land, to wit: 454.25 acres of lot No. 436 and 75.25 acres of lot 435, all in the 12th land district of Brooks County, Georgia, being bound on the north by the Quitman and Grooverville public road, east by lands of Tom Harrell and B. R. Strickland, south by original lot line of lot No. 436, and

west by J. R. Richardson. A plat of said land, made by Zeno Hutchinson, county surveyor, on August 14, 1919, will be attached to the deed when same is executed by obligors to obligee. The above-described land is known as the Dekle place, and is the place where H. E. Dekle resided for years." Plaintiff had executed notes to the amount of $15,220, and had paid $5000 on the day that the bond for title was delivered, and afterwards paid defendants $2000. The defendants had sued the plaintiff in the city court of Quitman on one of the notes which had been given for the deferred payments of the land. This was the suit sought to be enjoined. The plaintiff prayed for a judgment against the defendants for the $7000 that he had paid them, basing this prayer, as well as the prayer for cancellation and rescission, upon allegations, in substance, that there was a shortage in the number of acres of the property referred to in the bond for title, and that there was an absence of title on the part of the defendants to a part of the land referred to in the bond; and on account of various statements and representations which the plaintiff described as fraudulent, in that nut grass existed on the property; and on account of the absence of an all-year running branch through the place; and on account of misrepresentations as to acreage and boundaries.

To this petition the defendants filed demurrers both general and special, setting up that the petition does not set forth any cause for equitable relief; that the plaintiff has an adequate remedy at law; that there is no allegation that the defendants are insolvent, nor is it alleged that the plaintiff has been ousted of possession, nor that the defendants practiced any fraud to prevent an inspection of the property by the plaintiff, nor that the property is of less value by reason of plaintiff's contention than it was at the time of purchase and sale, nor that the purchaser was deprived of the opportunity of inspecting the land for himself by any fraudulent act of the defendants; and for the further reason that such things as the soil or springs on land are open for inspection, and the purchaser is wilfully negligent if he fails to look and see for himself, and neither law nor equity will relieve him from his own want of diligence. The defendants moved to strike paragraph 13 of the petition, on the ground that no sufficient reason is assigned why petitioner should repose confidence and trust in the de-

fendants, and the allegations of said paragraph do not show such confidential relations as to amount to a fraud on the part of the defendants. They moved to strike paragraph 15, on the ground that the same is not a sufficient allegation of the insolvency of the defendants. The demurrer was "sustained upon each and all of the grounds therein stated, particularly upon the ground that the bond for title attached to plaintiff's petition is construed by this court to be a sale by the tract and not by the acre." To this order the plaintiff excepted.

*John E. Morris Jr., John T. Norris,* and *Branch & Snow,* for plaintiff.

*Bennet & Harrell,* for defendants.

. RUSSELL, C. J. (After stating the foregoing facts.) In this case Roberts bought land from Groover and Strickland, taking the bond for title which is set forth in the statement of facts, and paying therefor the sum of $5,000 in cash, and giving two notes, for $5,000 and one for $5,220, for the unpaid portion of the purchase-price. Groover and Strickland brought suit in the city court of Quitman for $3,000, the unpaid balance on the first note; and Roberts filed the pending equitable petition asking that the contract of purchase be rescinded, and that the suit in the city court be in the meantime enjoined. Upon an interlocutory hearing held on September 24, 1921, the judge refused the injunction prayed for. The case was brought to this court upon this ruling; and it was held: "The evidence submitted at the interlocutory hearing being conflicting upon the controlling issue, the judgment of the court at such hearing, denying the injunction, will not be disturbed here." *Roberts* v. *Strickland,* 153 *Ga.* 529 (112 S. E. 560). In that case Groover and Strickland were "restrained and enjoined from selling, alienating, hypothecating, or otherwise disposing of the notes (other than the one sued on in the city court of Quitman, Georgia) heretofore made to them by the plaintiff, W. W. Roberts Jr., until the further order of this court; the restraining order heretofore entered relative to the suit in the city court of Quitman, Ga:, by above defendants against above plaintiff, is hereby vacated, and said defendants are permitted to proceed with the prosecution of that suit in the city court of Quitman, Georgia, irrespective of the existence of this litigation herein." Upon the return of the remittitur the case was called for trial;

and after the allowance of an amendment offered by the plaintiff, and after argument upon the demurrers, the judge passed the order set forth in the statement of facts and dismissed the plaintiff's petition.

The amendment referred to was filed on November 8, 1922, and alleged: that the bond for title contained no boundary for six sevenths of the area on the east side of the acreage sought to be purchased by the plaintiff from the defendants; that, although the bond for title attempted to describe an eastern boundary of the acreage in dispute, in point of fact the said eastern boundary referred entirely and only to the 75.25 acres of lot 435 as specified in the bond, and did not refer or attempt to refer to any eastern boundary for the much larger acreage sought to be conveyed as part of land lot number 436; that there are only 420.47 acres in the west half of lot number 436, which, in accordance with the bond for title, is bounded on the west by J. R. Richardson; that the bond referred to the west part of lot 436, and the defendants were not in a position to make title to 454.25 acres of lot 436; that in December, 1921, plaintiff returned to defendants their bond for title, with signed authority to the clerk of the superior court of Brooks county to cancel the same of record, and returned to them the map which they handed him when they gave him the bond for title; that said papers had been received by the defendants, and none of them had been returned to the plaintiff; and that the delivery of said papers constituted a complete cancellation of the attempted trade between the parties.

The ultimate question in this case is whether Roberts is entitled to a rescission of the contract of purchase and sale. It must be noted that the trial judge based his judgment " *particularly* " (italics ours) upon the ground that the sale was by the tract and not by the acre; and inasmuch as the right to rescind where the sale of land is made by the tract is affected by so many considerations which have no application where the sale is by the acre, the decision in this case may, in a large sense, be said to hinge and turn upon whether the purchase of the lands in the present instance was by the tract or by the acre. We think the learned trial judge erred in dismissing the petition. And since it appears that the decision was based especially upon the ground that the court adjudged the sale of the land to be by the tract instead of by the

acre, we shall first deal with the question as presented by the record: whether the sale in controversy was a sale of land by the tract; or did the plaintiff, as he contends, purchase 529.50 acres of land in land lots 435 and 436 of Brooks County, Georgia, which by the terms of the bond for title was warranted to be delivered into his possession?

In dealing with the subject of deficiencies in the sale of land it is declared in the Civil Code (1910), § 4122: "In a sale of lands, if the purchase is per acre, a deficiency in the number of acres may be apportioned in the price. If the sale is by the tract or entire body, a deficiency in the quantity sold cannot be apportioned. If the quantity is specified as 'more or less,' this qualification will cover any deficiency not so gross as to justify the suspicion of wilful deception, or mistake amounting to fraud; in this event the deficiency is apportionable; the purchaser may demand a rescission of the sale or an apportionment of the price according to relative value." Section 4124 is as follows: "If the purchaser loses part of the land from defect of title, he may claim either a rescission of the entire contract, or a reduction of the price according to the relative value of the land so lost." It will thus be seen that where the sale is by the tract, there can be no apportionment of the deficiency in land, unless the deficiency be so gross as to justify the suspicion of wilful deception or a mistake amounting to fraud. But if the sale of land be by the acre, the purchaser may demand either an apportionment of the price according to the relative value, or a rescission of the entire contract of-sale. The plaintiff in this case asks a rescission and return and cancellation of his notes, and a judgment against the defendants for the sum of $7,000 which he alleges he had paid them. In *Parks* v. *Norman,* 108 *Ga.* 373-374 (33 S. E. 1005), where, as in the present case, "The main and controlling question in the case" was "whether Parks purchased by the tract or by the acre," Chief Justice Simmons, delivering the opinion of the court, held that where the quantity of the land was of the essence of the contract the sale would be one by the acre. "If the quantity of the land was of the essence of the contract and the deed described it in proper terms, Parks ought to have recovered for the deficiency. If, however, the land had been sold and the description thereof had been by metes and bounds or by monuments or any other marks capable of

identification, and the statement of the number of acres been merely a part of the description, Parks would then have bought by the tract and not by the acre, and could not have recovered for a deficiency in the number of acres. Nor could he in such case introduce parol evidence to contradict the terms of the deed. If the deed was as to the matter of description ambiguous, parol evidence might have been admissible to explain its meaning." If, then, the quantity of land as set forth in the bond for title before us is of the essence of the contract, the plaintiff is entitled to rescind this contract upon this ground alone, aside from the other contentions as to fraud and misrepresentations alleged in his petition. We think it very plain that the quantity of land is of the essence of this contract. One very unusual feature is to be noted at the outset in this bond for title. In describing lands, either in bonds for title or in deeds, generally the description of the property usually starts with such words as " all that tract or parcel of land," etc., or " a tract or parcel of land." The use of these words prima facie implies a sale of land by the tract, especially if the phrase " more or less " be also used. It is therefore to be noticed in the present case as showing that the quantity of land is of the essence of the contract, as stated by Chief Justice Simmons in the *Parks* case, supra, that the first statement in the bond for title now before us omits any reference to a tract of land, and the description begins with " to all the following described land, to wit: 454.25 acres of lot No. 436 and 75.25 acres of lot 435, all in the 12th land district of Brooks County, Georgia." In our opinion this is a covenant to sell five hundred and twenty-nine and one half acres of land, no more and no less.

In the cases of *Rawlings* v. *Cohen,* 143 *Ga.* 726 (85 S. E. 851), and *Kendall* v. *Wells,* 126 *Ga.* 343 (55 S. E. 41), upon which the defendants rely, it was properly held that the sales then under consideration were by the tract; but there is no similarity between the description in either of these cases and the case at bar. The language of the conveyance in each of these cases showed that the quantity of the land was not of the essence of the contract. In the *Rawlings* case the deed described the land conveyed as follows: " all that tract or parcel of land lying, being, and situated in the State and County aforesaid, and in the 136th Dist. G. M., and containing two hundred and fifty-nine (259) acres, *more or less,*

[italics ours] and bounded as follows: North by lands of J. W. Slade, G. D. Warthen, and W. L. Knight; East by lands of William Rawlings; South by lands of William Rawlings, and West by lands of W. E. Jordan. The above-described land being the same conveyed by deed to me by R. L. Smith, the 10th November, 1894, and recorded in Clerk's office, Washington County November 10th, 1894, in Book 'M,' folio 509." It being expressly recited in the deed that the sale was made as a tract, and the purpose of the use of the term "more or less·" being to evidence a refusal to guarantee quantity, and this term being held as a matter of law sufficient to cover any deficiency which is not so gross as to raise the implication of fraud or of mutual mistake, the court could not, under these facts, have adjudicated otherwise than it did. In the *Kendall* case, the deed was held to be a conveyance of land by the tract, and not by the acre. · The description again started with a recital that the land being conveyed was " A certain tract of land in the 8th land district of Colquitt County, Ga., known and described in the plan of said 8th district as part of west half of land lot No. 85, containing 50 acres in the southwest corner of said lot 85, and bounded as follows to wit: commencing on the south line of said lot 85, on the west side of Georgia Northern Railway Co., railroad and 100 feet from the center of the railroad track, and running west 34 chains along said land line to the southwest corner of said lot 85, thence north along west land line said lot 85 13 chains to stake, thence east 25 chains to within one hundred feet Ga. Northern Ry. track to a stake, thence south along said right of way to place of commencing." In both of these cases it will·be noticed that the features pointed out in the *Parks* case existed, as distinguishing a sale by the tract, to wit, that the description of the land is by metes and bounds or by monuments, and the statement of the numbers of acres is merely a part of the description. In the case at bar there no mention of either metes or bounds, nor are any monuments or other marks referred to in the bond for title. It is true that there is a statement that the land is bounded by certain other landowners and by the Quitman and Grooverville road, but there is no effort made to define the courses or the distance along which the road bounds the tract of land conveyed, nor any effort whatever made to point out marks of identification defining the boundaries of coterminous

landowers. The case of *Longino* v. *Latham,* 93 *Ga.* 274 (20 S. E. 308), in which it was held that the sale was by the tract and not by the acre, is dissimilar to the case at bar, because in the description of the land to be sold by the administrator it was alleged that there was to be sold by the administrator " a certain tract or parcel of land," and by this statement, there being no covenant as to quantity, probable purchasers were advised that the sale was by the tract.

Rationally construed, an instance where the first expression of the contract is a statement that a quantity of land so definitely fixed as to require a measurement down to one fourth of a acre, and which is not otherwise described than by the general statement that it is bounded by lands of certain named persons, must be said to be sold by the acre. Some description is necessary in order to enable a surveyor to find the lines by which the fixed quantity to be sold can be identified and surveyed, or else the attempted conveyance would be void for want of description; and therefore the mere statement that the land is bounded by lands of certain persons should not defeat the stipulation of a contract like this which called, not for a tract containing so much land, more or less, but for 454.25 acres from a designated land lot and 75.25 acres from another designated land lot, aggregating the definite sum of five hundred and twenty-nine and 50-100 (529.50) acres. To hold otherwise would be to declare that a contract for the sale of land by the acre could not be made at all; 'for in the *Parks* case, supra, this court held that to purchase land by the acre the deed must " describe it in proper terms." The fact that the land is also described as being known as the " Dekle Place," which, as the naming of the coterminous owners, is only part of the proper description referred to in the *Parks* case, does not, in our opinion, defeat the natural inference arising from the precise and exact statement of the number of acres and fractions of acres set forth in the bond for title (see *Roberts* v. *Wilson,* 153 *Ga.* 538, 541, 112 S. E. 451) and the unusual and apparently intentional omission of any reference to a tract or tracts of land, as well as of the very significant phrase " more or less," which is employed almost universally for the very purpose of covering any variation in the quantity of land sought to be conveyed. As said in 2 Devlin on Deeds (2d ed.), § 1044: " In the description of land it is usual,

*after* the description by metes and bounds or subdivisions, to add a clause stating that the land described contains so many acres." It will be noted in this case that the quantity is the first thing stated. In *Kendall* v. *Wells,* supra, it was held that "The language may be such as to make quantity the controlling element in the description." In the present case, as it appears to us, the quantity is of the essence of the contract, and not merely a part of the description. The description is supplied in order to locate the land to be conveyed; for in the bond for title in this case the vendors first oblige themselves to make a good title to an exact number of acres, and then proceed to describe where that exact number of acres is to be found. In 4 Kent's Commentaries (14th ed.), *467, it is said "Whenever it appears by definite boundaries [and the boundaries here are not definite] or by words of qualification, as 'more or less' or as 'containing by estimation,' or the like, that the statement of the quantity of the acres in the deed is mere matter of description, and not of the essence of the contract, the buyer takes the risk of the quantity if there be no intermixture of fraud in the case."

As to the use of the words "more or less," Judge Lumpkin in *Kendall* v. *Wells,* supra, said: "In that part of the code section quoted which relates to the subject of a deed stating the quantity as 'more or less,' nothing is expressly said as to a deed where the description of the tract of land mentions a certain number of acres but does not add the words 'more or less.' Clearly it was not intended that the addition of those words would give a superior right of apportionment for a deficiency, where it would not exist without them. To so hold would reduce this provision of the section to an absurdity. . . This section never meant to declare that the right of a purchaser to apportion for a deficiency is in inverse ratio to the definiteness of the description in his deed. One of two things must be the case: either that the sale of land by the tract, containing as a part of the description a statement of the number of acres, stands on the same basis, whether or not the words 'more or less' be added; or that it has a better standing without those words. It certainly could have no worse." The fact that in the bond for title here involved the statement of quantity comes first is a circumstance of no small import; for almost invariably, in fact in all of the adjudications which I have examined, the number

of acres follows other portions of the description, and therefore may properly be treated as part of the description, whereas in the present case the covenant is to sell a definite number of acres which is thereafter described. For this reason in 2 Warvelle on Vendors, § 822, the author in treating of the phrase " more or less " says: " The difficulty arises in determining whether the sale was intended to be in gross or by the acre. If the former, the authorities are unanimous in declaring that the mention of the quantity of acres *after* [italics ours] another and certain description, whether by metes and bounds or other known specifications, is not a covenant or agreement as to the quantity to be conveyed, particularly if qualified by the terms ' more or less,' or ' containing by estimation,' or similar expressions." That being the general rule where the number of acres is stated after the description, it would seem that the converse would be true where the quantity is stated without the qualification of the words " more or less," in a case where no description was attempted in the instrument until the quantity had been definitely fixed. We hold therefore that this case falls under the ruling of this court in *Strickland* v. *Hutchinson, 123 Ga.* 396 (51 S. E. 348), in which it was held that where the description of land sold, as contained in the bond for title, was " 333 acres of land in the southeast corner of lot of land No. 416 in the 11th district of Lowndes county," the number of acres was of the essence of the description. In this case, as in the cases already cited, the difference between a covenant to sell a certain specified and definite number of acres *before* any description of the land to be conveyed is attempted, and the use of an estimated quantity as a part of the description, is again pointed out. Judge Lumpkin, who delivered the opinion, defined a sale by the tract as follows: " Thus if a tract of land should be described in a bond for title by metes and bounds, or by some descriptive name or designation which would describe it as a whole, and the number of acres should merely be stated as an additional description, this would be a sale by the tract or entire body." We construe the bond for title under consideration as primarily a covenant to sell five hundred and twenty-nine and 50-100 (529.50) acres of land; the description following this covenant contains no reference whatever to the quantity covenanted to be sold, and is used merely for the purpose of identification; and consequently we think the trial judge erred in sustaining the demurrer.

The judgment overruling the other grounds of demurrer was no doubt based upon the theory, as embodied in the opinion of the court, that the sale of the land was one by the tract, and in that view of the case was right; but since in our opinion the sale of land was by the acre, these rulings cannot be sustained.

*Judgment reversed. All the Justices concur, except*

BECK, P. J., dissenting. The land sold in this case is thus described in the bond for title: " all the following described land, to wit: 454.25 acres of lot No. 436 and 75.25 acres of lot 435, all in the 12th land district of Brooks County, Georgia, being bound on the north by the Quitman and Grooverville public road, east by lands of Tom Harrell and B. R. Strickland, south by original lot line of lot No. 436, and west by J. R. Richardson. A plat of said land, made by Zeno Hutchinson, county surveyor, on August 14, 1919, will be attached to the deed when same is executed by obligors to obligee. The above-described land is known as the Dekle place, and is the place where H. E. Dekle resided for years."

In my opinion the sale of the land was by the tract. Strong emphasis as laid in the opinion of the majority upon the fact that the number of acres sold is stated before the description by boundaries is given. The relative positions of the different elements of the description may sometimes be significant, but can not be controlling unless there is something else in the case to give them that importance. The contract as set forth in the bond for title is to convey " all the following described land, to wit:   454.25 acres," etc. The meaning of that is that the obligor binds himself to convey a tract of land containing 454 and a fraction acres. The boundaries of the lot on four sides are given, and then following that is a statement that a plat of the land, made by a certain surveyor, will be attached, etc.; and then the land is further described as the land which " is known as the Dekle place, and is the place where H. E. Dekle resided for years." Where the name of the tract of land sold is stated, it being capable of identification as the place on which a certain person lived, and the boundaries on the north, east, south, and west are also given, I do not think that the mere fact that this was preceded by the statement of the number of acres contained shows, as a matter of law, that the place was sold by the acre. The fact that the number of acres, down to a fraction of an acre, is stated, is pointed out by the writer of the

majority opinion as a significant fact tending to show that the land was sold by the acre; but I call attention to the fact that there is no statement that the land is sold for so many dollars or so many dollars and cents per acre, as was frequently done in cases where the sale was held to be by the acre. Let it be remembered that the contract does not begin with the statement that the vendor sells so many acres of land, but begins with the statement that he sells certain " described land, to wit: 454.25 acres of lot 436," etc. If any deduction can be made from the mere arrangement of the words and terms of the description, then the statement of the number of acres must be regarded here, in view of all the other terms, as a part of the description. The words contained in the quotation last made mean substantially this: Lands which, described by acres, are as follows: 454.25 acres of lot No. 436, etc. Described by boundaries, it is described as follows: on the north by a named public road, on the east by lands of A, on the west by lands of B, south by original lot line of lot 436. Further, it is described by a plat made by a certain surveyor. Fourth, it is described as a tract of land known as the Dekle place. Three of these different descriptions are the descriptions of a tract of land; one of the descriptions relied on is the statement of the number of acres contained. I do not think that one element of the description of the land sold can be selected and held to be dominant and controlling. The entire description should be considered; and giving it due consideration, I am of the opinion that the sale of the land described was by the tract.